```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

MARK A. MORAD                                    CIVIL ACTION

VERSUS                                           NO: 12-2190

LINO J. AVIZ, ET AL.                             SECTION: R

## ORDER AND REASONS

Before the Court is Mark Morad's motion to dismiss Nationwide Insurance Company's counterclaim for declaratory judgment. For the following reasons, the Court GRANTS Morad's motion.

## I.   BACKGROUND

Mark Morad hired Lino Aviz and Aviz Home Improvement & General Contractor, Inc. ("Aviz") to install a driveway, walkway, and patio at Morad's residence. Morad is now suing Aviz for professional negligence, breach of contract, and redhibition.[1] Nationwide Insurance Company ("Nationwide"), Aviz's general liability insurer, is also named as a defendant.[2]

Nationwide has filed a counterclaim seeking a declaratory judgment that it does not owe Aviz a duty to defend or

---

[1] R. Doc. 1.

[2] R. Doc. 1 at 2.

indemnify.[3] Morad now asks this Court to dismiss Nationwide's counterclaim pursuant to Rule 12(b)(6).[4]

## II. MOTION TO DISMISS STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1960 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a

---

[3] R. Doc. 19.

[4] R. Doc. 25-2.

reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

## III. DISCUSSION

Morad makes two arguments for why Nationwide's declaratory judgment counterclaim should be dismissed: (1) there is no case or controversy, and (2) the allegations in Morad's complaint potentially trigger coverage under the Nationwide policy.

### A. MISSISSIPPI LAW AND LOUISIANA LAW DO NOT MATERIALLY DIFFER ON THESE ISSUES

As a threshold matter, the parties dispute whether Louisiana or Mississippi law governs the interpretation of Nationwide's insurance policy. Federal courts sitting in diversity must apply the choice-of-law provisions of the state in which they sit. *Duhon v. Union Pac. Res. Co.*, 43 F.3d 1011, 1013 (5th Cir. 1995) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941)). Louisiana's choice-of-law rules, then, determine which state's substantive law will apply. The Louisiana choice of law rules applicable to insurance contracts are found in La. Civ.

Code art. 3537 and La. Civ. Code art. 3515. *See Champagne v. Ward*, 893 So. 2d 773, 786-87 (La. 2005); *Norfolk S. Corp. v. Cal. Union Ins. Co.*, 859 So. 2d 167, 179-80 (La. Ct. App. 2003). These statutes provide:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

La. Civ. Code art. 3537; and

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

La. Civ. Code art. 3515.

4

When interpreting insurance contracts, Louisiana courts generally apply the law of the state "where the insurance contract was issued and executed." *Am. Elec. Power Co. Inc. v. Affiliated FM Ins. Co.* 556 F.3d 282, 285 n.2 (5th Cir. 2009); *Woodfield v. Bowman*, 193 F.3d 354, 360-61 (5th Cir. 1999) (applying Mississippi law and noting that "Louisiana courts generally choose the law of the state in which the insurance policy in question was issued to govern the interpretation of the terms of the policy"); *Breese v. Hadson Petroleum (USA), Inc.*, 955 F. Supp. 648, 650 & n.5 (M.D. La. 1996) (applying Mississippi law when "the policy was negotiated and executed in Mississippi"); *Resure, Inc. v. Chem. Distribs. Inc.*, 927 F. Supp. 190, 192 (M.D. La. 1996) ("When confronted with similar cases, Louisiana courts consistently apply the law of the state in which the insurance policy was executed.").

Considering these principles, Mississippi is the state the policies of which would be most seriously impaired if its law were not applied to this issue. Mississippi is the domicile of the insured and the state where the policy was sold, negotiated, and issued.[5] Further, the Nationwide agent's office is located in Mississippi.[6] Louisiana law may apply to the underlying construction contract between Aviz and Morad, but it is the

---

[5]  R. Doc. 19-1.

[6]  *Id.*

insurance policy between Nationwide and Aviz that is at issue. Mississippi has a significant policy interest in regulating its insurance industry, and its policies would be most seriously impaired if its law were not applied. *Breese*, 955 F. Supp. at 650; *Anderson v. T&D Mach. Handling, Inc.*, No. 94-3188, 1996 WL 518140, at *3 (E.D. La. Sept. 9, 1996) (applying Georgia law when "Georgia's contacts include being the place of negotiation, formation and performance of the contract of insurance" and noting that applying Louisiana law would "superimpose the choice of law for delictual obligations on this conventional obligation issue").

Importantly, while Nationwide makes various attempts, the parties have not identified material differences between Louisiana law and Mississippi law as they apply to the issues in this case. Under these circumstances, courts apply the forum law. *Am. Elec. Power.*, 556 F.3d at 286 n.2 ("When there is no conflict, no conflict-of-law analysis is necessary, and the forum law applies."). As shown below, even accepting Nationwide's argument that Mississippi law applies, the outcome remains the same.

**B. RIPENESS**

Morad argues that Nationwide's counterclaim presents no case or controversy and should be dismissed. While stylized as a 12(b)(6) motion, whether there is a live case or controversy

speaks to this Court's subject matter jurisdiction pursuant to Rule 12(b)(1). Morad's motion will be successful if this Court lacks the statutory or constitutional power to adjudicate the case.

A federal court may not issue a declaratory judgment unless there is an actual case or controversy. *Columbia Cas. Co. v. Ga. & Fla. Railnet, Inc.*, 542 F.3d 106, 110-11 (5th Cir. 2008). An actual case or controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Orix Credit Alliance v. Wolfe,* 212 F.3d 891, 896 (5th Cir. 2000).

Morad argues that Nationwide's counterclaim does not implicate an actual case and controversy because Morad's underlying claim of liability has not yet been determined. Importantly, Nationwide is seeking a declaratory judgment on its duty to defend *and* its duty to indemnify. Courts have routinely held that courts may determine an insurer's duty to defend even before the underlying suit is decided. *Columbia Cas. Co.*, 542 F.3d at 110-11 ("An actual case or controversy exists before the resolution of an insured's underlying suit concerning the insurer's *duty to defend*."). This is because a duty to defend is determined by the allegations in the pleadings and the insurance policy alone. Accordingly, Nationwide's counterclaim seeking a declaratory judgment on its duty to defend is justiciable.

Morad argues that Nationwide's duty to defend claim is "apparently derivative and based upon its position on its duty to indemnify."[7] This argument seems to suggest that if Nationwide's indemnity claim is not justiciable, then neither is its duty to defend claim. A duty to indemnify, however, is distinct from the duty to defend. An insurer's duty to defend is broader than its obligation to indemnify. Significantly for ripeness analysis, a duty to defend arises whenever "the pleadings against the insured disclose a possibility of liability under the policy." *Travelers Cas & Sur. Co. of Am. v. Univ. Facilities, Inc.*, No. 10-1682, 2012 WL 1198611, at *3 (E.D. La. Apr. 10, 2012). A duty to indemnify, however, is "triggered by the actual facts that establish liability in the underlying lawsuit." *Columbia Cas. Co.*, 542 F.3d at 110-11. Accordingly, courts have held that while a duty to defend is justiciable before the underlying issue of liability is resolved, the duty of indemnity is generally not. *Coregis Ins. Co. v. School Bd. Of Allen Parish*, No. 07-30844, 2008 WL 2325632, at *2-3 (5th Cir. June 6, 2008).

The duty of indemnity is sometimes addressed before the resolution of the underlying suit when "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Northfield*, 363 F.3d at 536-37 (5th Cir. 2004). As discussed below, this exception

---

[7] R. Doc. 25-2 at 3.

does not apply because the Court finds that Nationwide has a duty to defend Aviz. Therefore, Nationwide's duty to indemnify claim is not justiciable before the resolution of the underlying suit.

**C.    NATIONWIDE OWES A DUTY TO DEFEND**

Morad argues that Nationwide's counterclaim should be dismissed because it has a duty to defend under its policy.

**1. MISSISSIPPI AND LOUISIANA APPLY THE EIGHT-CORNERS RULE**

Mississippi has adopted the "eight-corners test" to determine whether an insurer has a duty to defend. *U.S. Fidelity & Guar. Co. v. Omnibank*, 812 So. 2d 196, 200 (Miss. 2002) ("Under Mississippi law, the determination of whether a liability insurance company has a duty to defend depends upon the language of the policy. . . . [and] is to be determined by analyzing the allegations of the complaint or declaration in the underlying action."). Under this test, the Court reviews the allegations in the underlying complaint to see whether they state a claim that is within or arguably within the scope of the coverage provided by the insurance policy. *Ingalls Shipbuilding*, 410 F.3d at 224-25. When comparing the words of the complaint with the words of the policy, the Court "look[s] not to the particular legal theories" pursued by the plaintiff, "but to the allegedly tortious conduct underlying" the suit. *Id.* (citations omitted). "If the complaint alleges facts which are arguably within the policy's coverage, a duty to defend arises." *Evanston Ins. Co. v.*

*Neshoba County Fair Ass'n, Inc.*, 442 F. Supp. 2d 344, 346-47 (S.D. Miss. 2006). Louisiana has also adopted the "Eight Corners Rule." *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009).

Nationwide argues that Mississippi is an eight corners "plus" state and allows courts to consider evidence beyond the complaint and policy. Nationwide relies on *Architex Association Incorporated v. Scottsdale Insurance Company*, 27 So. 3d 1148, 1159 (Miss. 2010), and *Lafayette Insurance Company v. Peerboom*, 813 F. Supp. 2d 823 (S.D. Miss. 2011), to support its argument. *Architex*, however, did not address an insurer's duty to defend. Instead, as Nationwide notes, *Architex* addressed whether "the intentional act of hiring subcontractors by the insured general contractor precludes the possibility of coverage." *Architex*, 27 So. 3d at 1154. *Architex* explained that the underlying facts will determine whether coverage would exist. *Id*. at 1161. Whether an insurer has a duty to defend and whether there is actual coverage under the policy are distinct questions. The duty to defend arises if the complaint alleges facts that are arguably within the policy's coverage. *Evanston*, 442 F. Supp. 2d at 346-47. Accordingly, *Architex* does not support Nationwide's position that this Court may look at extrinsic evidence beyond the eight-corners test.

Similarly, *Peerboom* recognized "whether a liability carrier has a duty to defend depends on the policy language and the allegations of the complaint." *Peerboom*, 813 F. Supp. 2d at 825 (referring to the "so-called 'eight-corners' test" (citing *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 443 (5th Cir. 2009))). Further, the court refused to grant summary judgment to an insurer seeking a declaration that it owed no coverage and no duty to defend when the complaint "le[ft] open the possibility that 'property damage' at issue was . . . the result of an 'occurrence.'" *Id.* at 829. Again, while the underlying facts of the case are important for the determination of coverage, the duty to defend is determined by applying the eight-corners test and asking whether the "complaint alleges facts which are arguably within the policy's coverage." *Id.* at 825 (granting summary judgment on other grounds because an exclusion applied) (citing *Sennett v. U.S. Fidelity & Guar. Co.*, 757 So.2d 206, 212 (Miss. 2000)). *Peerboom* is simply another application of the eight-corners rule.

Finally, Nationwide relies on *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440 (Miss. 2006). *Baker* considered a law firm's coverage opinion. *Baker* once again articulates that the duty to defend is triggered when an insured "becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the

11

policy." *Baker*, 920 So. 2d at 451. *Baker* does not suggest a deviation from the eight-corners test.

Nationwide's argument that the "courts of Mississippi have spoken and have clearly announced that Mississippi is an eight corners 'plus' state" is unsupported and fails.[8] Nationwide's duty to defend could be determined at the moment the petition was filed because the only two documents relevant to its duty-to-defend are the insurance policy and the petition. *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011).

### 2. "OCCURRENCE" UNDER THE POLICY

Nationwide first argues that Morad's damages are not covered by its policy because the complaint does not allege an "occurrence" under the policy. The policy reads, in pertinent part, "we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."[9] The policy further provides that the insurance applies to "bodily injury" and "property damage" only if "(1) the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'"[10] The policy then defines an "occurrence"

---

[8]   R. Doc. 42-2 at 5.

[9]   R. Doc. 19-1 at 10.

[10]  *Id.*

as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[11]

Although the policy does not define "accident," the Mississippi Supreme Court has addressed its meaning. For example, the Court has noted that an "insured's intentional actions [do] not constitute 'accidents,' and the damages resulting therefrom [do] not amount to 'occurrences,'" even if the insured acts in a negligent manner. *Architex*, 27 So. 3d at 1159. That is, "even if an insured acts in a negligent manner, that action must still be accidental and unintended to implicate policy language." *Id.* at 1158 (citations omitted). Synthesizing these principles, the Mississippi Supreme Court has held that an act is not an "accident," and thus not an "occurrence" if "(1) the act is committed consciously and deliberately, without the unexpected intervention of any third force; and (2) the likely (and actual) effect of the act was well within the actor's foresight and anticipation." *Allstate Ins. Co. v. Moulton*, 464 So. 2d 507, 509 (Miss. 1985). In short, "an insurer's duty to defend under a general commercial liability policy does not extend to negligent actions that are intentionally caused by the insured." *U.S. Fidelity & Guar. Co. v. Omnibank*, 812 So. 2d 196, 202 (Miss. 2002); *see also Nat'l Builders & Contractors Ins. Co. v. Slocum Construction, L.L.C.*, 428 Fed. App'x 430, 432 (5th Cir. 2011)

---

[11]     *Id.* at 23.

13

(noting that the question of coverage "turns on the distinction between an inadvertent action and a mistake. The former, is an accident . . . but the latter is not, because the insured intended the action underlying the mistake, even if he did not intend the results or if he based his action on erroneous information").

### 2. MORAD'S CLAIMS ARE POTENTIALLY THE RESULT OF AN "OCCURRENCE"

Plaintiff alleges that Aviz was professionally negligent, breached its contract, and is liable for redhibition. Morad alleges Aviz was professionally negligent because it (1) used yard grade pavers instead of driveway grade pavers, (2) failed to dig deep enough to accommodate the multiple layers of filler required under the pavers for proper support to prevent subsidence and breakage, (3) failed to use the proper amount of fillers under the pavers, (4) used incorrect sealer on the pavers, (5) knowingly permitted its licence to expire during the course of the project and failed to renew it, and (6) that these acts caused damages to Morad's sprinkler system.[12]

Faulty workmanship is not excluded from coverage as a matter of law. *Carl E. Woodward, LLC v. Acceptance Indem. Co.*, No. 1:09cv781-LG-RHW, 2011 WL 98404, at *6 (S.D. Miss. Jan. 12, 2011). In *Architex*, the Mississippi Supreme Court disagreed with

---

[12]  R. Doc. 1.

14

the Fifth Circuit's application of Mississippi law in *ACS Construction Company, Incorporated v. GCU*, 332 F.3d 885 (5th Cir. 2003). In *ACS*, the court found that faulty workmanship did not amount to an "occurrence." *ACS*, 332 F.3d at 891. The Mississippi Supreme Court disagreed and held that faulty or improper construction is not in itself an "occurrence," but is "typically *the result* of either accidental or intentional acts." *Artchitex*, 27 So. 3d at 1156-57. The Court concluded that whether a contractor's acts are intentional or accidental depends on the facts of the case, and that the record was insufficiently developed for the Court to answer whether the contractor's actions were "accidental, intentional or neither." *Id.* at 1161.

When, as in this case, the "complaint leaves open the possibility that the 'property damage' at issue was proximately caused by an accident (an inadvertent act), and that the claimed 'property damage' was thus the result of an occurrence," courts have held that the insurer has a duty to defend. *Peerboom*, 813 F. Supp. 2d at 827-28 (plaintiff's allegations that a contractor failed to use sufficient and proper equipment, approved engineering techniques, and generally accepted methods in performing the jacking operations left open the possibility that damage was caused by an accident).

Aviz's negligent workmanship could have been intentional or accidental and therefore potentially triggers coverage under

15

Nationwide's policy. The record is not developed to the point where the court can conclusively state that Aviz's alleged negligent acts were done intentionally and not accidentally. *Woodward*, 2011 WL 98404, at *5-7 (noting that "the Court cannot determine from the record before it whether the concrete subcontractor [acted] accidentally" but finding that the record was "sufficient to trigger potential liability under the policy and thus a duty to defend"); *Nationwide Mut. Fire Ins. Co. v. Hayes*, No. 1:09cv317-LG-RHW, 2010 WL 3603797, at *2 (S.D. Miss. Sept. 7, 2010) (noting that "the Mississippi Supreme Court rejected the Fifth Circuit's *Erie* guess on this point and held that negligent construction is an 'occurrence' under Mississippi law.").

In *Woodward*, for example, the Court found that allegations of faulty workmanship, namely, a failure to properly slope a balcony, atrium, and parking garage floors and the failure to install a continuous step at the balcony were sufficient to trigger a duty to defend because they left open the possibility that these mistakes were accidental. *Woodward*, 2011 WL 98404, at *5-7. These cases following *Architex* make clear that a claim of faulty workmanship typically leaves open the possibility of coverage and triggers the duty to defend. *See* Miss. Ins. Law & Prac. § 16:17 (2012) ("Since the *Architex* decision, courts have found that claims against contractors for negligent construction

16

must be defended as arguably falling within coverage.").[13] Because Morad's complaint leaves open the possibility of coverage, Nationwide will have a duty to defend unless a policy exclusion applies.

### 3. THE EXPECTED OR INTENDED INJURY EXCLUSION DOES NOT APPLY

Nationwide next argues that the policy exclusion for "'property damage' expected or intended from the standpoint of the insured"[14] precludes coverage, because "courts have examined the language of this exclusion using the same analysis employed to determine whether an act or omission constitutes an 'occurrence.'"[15] Because Morad's complaint leaves open the possibility that Aviz's conduct was accidental, this exclusion does not preclude recovery, because "[a]n accident by its very nature, produces unexpected and unintended results." *Omnibank*, 812 So. 2d at 199-200 ("[P]roperty damage, expected or intended from the standpoint of the insured, cannot be the result of an accident."). Accordingly, this exclusion does not foreclose a duty to defend by Nationwide.

---

[13]   Nationwide improperly relies on Fifth Circuit cases that predate *Architex* and do not deal with faulty workmanship. *See, e.g.*, *Acceptance Insur. Co. v. Powe Timber Co., Inc.*, 219 Fed. App'x 349, 352 (5th Cir. 2007) (per curiam) (holding there was no occurrence when plaintiffs alleged company failed to warn them of a dangerous product).

[14]   R. Doc. 19-1 at 11.

[15]   R. Doc. 28 at 20.

17

### 4. THE "DAMAGE TO YOUR WORK" EXCLUSION DOES NOT APPLY

Finally, Nationwide relies on the "damage to your work" exclusion to argue that it has no duty to defend. This provision excludes from coverage:

> "Property damage" to "your work" arising out of it or any part of it and included in the "produces-completed operations hazard".
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor. [16]

In order for this exclusion to apply, Morad must allege damages to "Your Work" as defined under the policy. Here, Morad's complaint alleges damages beyond Aviz's negligent work, namely, Morad alleges that Aviz's work caused damages to the underground sprinkler system and windows.[17] Accordingly, this exclusion does not preclude coverage. *Carl E. Woodward, LLC*, 2011 WL 98404, at *8 (holding that the "Damage to Your Work Exclusion" did not preclude coverage when the plaintiff "clearly indicates that the damage was not limited to the concrete subcontractor's work").

In sum, Nationwide has a duty to defend these claims because Morad's complaint leaves open the possibility of coverage and no exclusion precludes coverage.

---

[16]   R. Doc. 19-1 at 14.

[17]   R. Doc. 1 at 6.

### 5. WHETHER MORAD'S CLAIMS MAY BE "SPLIT" IS IRRELEVANT

Because this Court finds that Nationwide has a duty to defend, its declaratory-judgment action seeking a declaration that it has "no duty to defend" must be dismissed.[18] Nationwide argues that it has a duty to defend only claims that are potentially covered by the policy and no duty to defend claims that are not covered. *See Moeller v. Am. Gaur. & Liab. Ins. Co.*, 707 So. 2d 1062, 1072 (1996) ("American Guarantee had a contractual duty to defend that portion of the counterclaim against Moeller which alleged defamation.").[19] This argument is irrelevant to the instant motion. That some of Morad's claims might fall outside of Nationwide's policy does not extinguish

---

[18] R. Doc. 19 at 27.

[19] While this may be true, it appears to matter only for the prorating of defense costs. The court in *EEOC v. South Publishing Company, Incorporated*, 894 F.2d 785, 791 (5th Cir. 1990) explained that the general rule is that an insurer "is liable to the insured for his expenses in defending an action against him based upon claims falling both within and without policy coverage." *S. Pub. Co.*, 894 F.2d at 791. The Court articulated an exception to this rule:

> An insurer must bear the entire cost of defense when 'there is no reasonable means of prorating the costs of the defense between the covered and the not-covered items.' . . . These considerations do not apply where defense costs can be readily apportioned. The duty to defend arises solely under contract . . . Where the distinction can be readily made, the insured must pay its fair share for the defense of the non-covered risk.

*Id.* The prorating of Morad's defense expenses is irrelevant to the instant motion and not properly before the Court.

Nationwide's duty to defend those claims that are possibly covered. Accordingly, Nationwide's counterclaim seeking a declaratory judgment that it owes "no duty to defend," *whatsoever*, must be dismissed even though some of Morad's claims might fall outside of the policy's coverage.

**IV. CONCLUSION**

For the above reasons, Morad's motion to dismiss is GRANTED and Nationwide's counterclaim is dismissed.

New Orleans, Louisiana, this 5th day of April, 2013.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE